IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Jun 26 2019
U.S. DISTRICT COURT
Northern District of WV

MILES KILPATRICK HAWTHORNE,

    Plaintiff,

vs.

    1:19-CV-129 (Kleeh)
    Civil Action No. 19-C-_____

BANK OF AMERICA, NA

    Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Miles Kilpatrick Hawthorne, who, for his Complaint against the Defendant, Bank of America, NA, alleges as follows:

1. The Plaintiff, Miles Kilpatrick Hawthorne, is a West Virginia resident.

2. The Defendant, Bank of America, NA (hereinafter "Bank of America" or "BANA") is an American multinational banking and financial services corporation that engages in the servicing of mortgage loans. Its headquarters are located at 100 North Tyron Street, Suite 170, Charlotte, North Carolina 28202, and it does business in all 50 states, including West Virginia.

3. In February of 2011, Plaintiff financed his home purchase with a VA guaranteed mortgage loan from lender, Bank of America, N.A.

4. A dispute arose among the Parties with respect to Bank of America's servicing of the loan contract and attempts to collect on the debt owed by the Plaintiff. As a result, the Plaintiff filed a civil action against Bank of America in the Circuit Court of Harrison County, West Virginia captioned: *Hawthorne v. Bank of America, NA*, Harrison County Civil Action No. 14-C-230-1, a copy of this Complaint is attached as **Exhibit A.** The state court action was removed to this Court and designated as Civil Action No. 1:14-cv-103 and initially assigned to United States District

Judge Irene M. Keeley. On June 24, 2014, Judge Keeley deemed herself disqualified and transferred the action to the Honorable John P. Bailey, who at the time was the chief judge of the District Court for the Northern District of West Virginia. This removed civil action is at times referred to herein as "the Underlying Action" or "the Action."

5. In April of 2015, the Parties reached a full and amicable settlement of all claims raised in the Underlying Action. The Parties executed a formal settlement agreement titled Settlement Agreement and Release effective April 22, 2015 which terms are fully incorporated herein by reference ("the Settlement Agreement").

6. Pursuant to the Settlement Agreement, Bank of America agreed to "void the Loan" and release the deed of trust.

7. Bank of America further agreed as follows:

**Credit Reporting.** Defendant will not report the Loan as past due for any month from December 2011 until the date Defendant voids the Loan. Once Defendant voids the Loan, Defendant will electronically notify the major credit reporting agencies to which it furnishes information that the Loan has been paid in full. Defendant will use terminology or coding acceptable to the credit reporting agencies ("CRAs") to reflect the reporting requirements of this provision...

8. Upon information and belief, Bank of America failed to request the update from the CRAs as described above and/or took actions inconsistent with its credit reporting obligation and negated any such request.

9. Plaintiff eventually discovered that Defendant was negatively reporting the subject loan to the credit reporting agencies when he was unable to obtain reasonable financing for an automobile purchase in February of 2018 due to BANA's improper credit reporting of the subject loan account.

10. As of February of 2018, Bank of America was reporting the subject loan account negatively in contradiction with the parties' Settlement Agreement.

11.     For example, the Bank of America trade line provided to Equifax reported: a loan balance of $91,360, a past due amount of $7,420, a status of 120 days past due, and a loan history showing Plaintiff 30 - 180 days past due on 25 occasions from June 2011 to May 2014.

12.     Upon information and belief and as evident from this reporting, BANA failed to request an update of its reporting from the credit reporting agencies to account for the parties' settlement.

13.     Plaintiff disputed these negative reports with the three major credit reporting agencies, Equifax, Experian and TransUnion, in February of 2018 and again in October of 2018.

14.     In his first dispute to each of the three CRAs, Plaintiff identified the Action and described the Settlement Agreement:

> "Bank of America N.A., successor by merger to BAC Home Loan Servicing LP, is required by the terms of a settlement agreement to report this mortgage account paid in full and Bank of America is required to remove or correct negative credit reporting (Hawthorne v. Bank of America, N.A., 1:2014cv00103, June 16, 2014, U.S. District Court of the Northern District of West Virginia). The Release of Mortgage was filed on 06/01/2015."

15.     In his second dispute, Plaintiff provided the CRAs with supporting documentation.

16.     Upon information and belief, Bank of America was fully informed of these disputes by the CRAs.

17.     Upon information and belief, the first dispute with each CRA did not result in any change to BANA's reporting of Plaintiff's loan account.

18.     As of October 30, 2018, Experian was still reporting the loan account as: having a balance of $91,360, being 180 days past due each month from November of 2013 to April of 2014 and in foreclosure in May of 2014, and a status of "Foreclosure proceedings started" and "$7,420 past due."

19. Following a lengthy dispute process, on November 27, 2018, Experian, upon apparent direction of BANA, changed its reporting of the Bank of America trade line to report the status of "paid in settlement for less than the full balance." The Experian report advises that this negative status will remain on Plaintiff's credit report for seven years. BANA's revised report to Experian includes a loan history showing Plaintiff 30 - 120 days past due on 17 occasions from April 2012 to April 2014.

20. Similarly, TransUnion contacted Bank of America, which then updated its reporting in or around November of 2018. Unfortunately, Bank of America's updated information was also false, misleading and damaging to Mr. Hawthorne. It reported the Plaintiff's last pay status as "120 Days Past Due Date", showed Plaintiff 30 - 120 days past due in 17 instances from April 2012 to April 2014, and remarked that the account was "settled-less than full [balance]."

21. On January 21, 2019, Plaintiff filed a third written dispute with TransUnion in an effort to remedy Bank of America's improper reporting as reflected in the preceding paragraph.

22. On February 7, 2019, TransUnion advised the Plaintiff that it again "investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**."

23. Contrary to the referenced Settlement Agreement, Bank of America verified its reporting as accurate. Thus, BANA continued to report the Plaintiff's pay status as "120 Days Past Due Date", showed Plaintiff 30 - 120 days past due in 16 instances from May 2012 to April 2014, and remarked that the account was "settled-less than full [balance]."

24. Following an investigation by Equifax in 2018, which upon information and belief contacted Bank of America to inquire about the accuracy of its reporting, the trade line was revised. Unfortunately, Bank of America's updated information was also false, misleading and damaging to

Mr. Hawthorne.  The status remained 120 days past due and the loan history showed Plaintiff 30 - 180 days past due on 25 occasions from April 2012 to March 2018.

25. Upon information and belief, Defendant BANA repeatedly failed to conduct a reasonable and lawful investigation and unlawfully and wrongfully verified the reporting as accurate. Upon information and belief, Defendant BANA continues to falsely report the subject loan account.

26. Indeed, Plaintiff was recently adversely impacted when he was denied credit by Home Depot Credit Services on April 5, 2019 based on information it obtained from Experian.

27. As a direct and proximate result of Defendant's false credit reporting and related misconduct, the Plaintiff has suffered adverse actions and consequences in credit related transactions or in the ability to enter into credit related transactions.  The Plaintiff has suffered and continues to suffer actual damages, including, without limitation, lost credit opportunities, a detriment to his credit rating and damage to his reputation.

28. As a direct and proximate result of the wrongful conduct of the Defendant, the Plaintiff has further suffered economic losses, annoyance, inconvenience, aggravation, embarrassment, and emotional distress.

29. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

## COUNT I
### Breach of Contract

30. The foregoing paragraphs are realleged as if set forth fully herein.

31. The Defendant has a duty of good faith and fair dealing that is implied as a matter of West Virginia law into the underlying Settlement Agreement and requires that neither party shall do

anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of their contract.

32.     The Defendant has breached its contractual obligations under the terms of the Settlement Agreement, along with its duty of good faith and fair dealing by failing to remedy its credit reporting consistent with the terms of the Settlement Agreement and by providing additional false information to the credit reporting agencies or verifying its false reporting as accurate during the investigations of the credit reporting agencies.

33.     As a direct and proximate result of the breaches and wrongful conduct of the Defendant, the Plaintiff has suffered general contract damages, as further described above, including credit denials and other consequential damages.

## COUNT II
### Violations of the Fair Credit Reporting Act
### 15 U.S.C. §§ 1681s-2(b)

34.     Plaintiff re-alleges and incorporates paragraphs above as if fully set out herein.

35.     Defendant willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's disputes, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the information.

36.     Upon information and belief Defendant engaged in a mere "data conformity" review of disputed information, rather than conducting the required reasonable investigation

37.     As a result of this conduct, action and inaction of Defendant, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

38. Defendant's violations are willful as Defendant violated the terms of the Fair Credit Reporting Act repeatedly with knowledge or reckless disregard for the law.

39. Defendants' conduct, action and inaction was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling the Plaintiff to recover actual damages, as further described above, under 15 U.S.C. 1681o.

40. The Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment against the Defendant for all damages, penalties, attorneys' fees and relief alleged herein, together with pre and post judgment interest, and any other relief the Court deems just and proper.

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE

                                          MILES KILPATRICK HAWTHORNE,
                                          Plaintiff

By:    /s/ Jason E. Causey
           JAMES G. BORDAS, JR. #409
           JASON E. CAUSEY #9482
           BORDAS & BORDAS, PLLC
           1358 National Road
           Wheeling, WV  26003
           (304) 242-8410 (phone)
           (304) 242-3936 (fax)
           jcausey@bordaslaw.com
           *Counsel for Plaintiff*