IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

MILES K. HAWTHORNE,

    Plaintiff,

v.                                             CIVIL ACTION NO. 14-C-230-1

BANK OF AMERICA, N.A.,

    Defendant.

## COMPLAINT

1. This action arises out of abusive mortgage loan servicing against a disabled veteran of the United States Coast Guard, in which Defendant Bank of America, N.A., breached express terms of the borrower's mortgage loan contract by pursuing foreclosure on Plaintiff Miles K. Hawthorne's home without considering him for all possible alternatives to foreclosure. Mr. Hawthorne served in the United States Coast Guard from 1998 to 2002, and was stationed in New York City while on active duty during September 11, 2001, and was deployed with the United States Navy in the wake of September 11, 2001, to search and patrol our harbors and coast lines in the aftermath. By virtue of his honorable service to this country, Mr. Hawthorne qualified for a home mortgage loan guaranteed by the Department of Veterans Affairs.

VA-guaranteed home mortgage loans provide special benefits to Veterans of the United States Armed Forces that ensure home retention is a priority for mortgage loan servicers and that are designed protect against, to the extent possible, foreclosure against veterans and resulting homelessness of veterans and their families.

Here, instead of complying with the law and the contract, and working with Mr. Hawthorne to help him save his home, Defendant aggressively pursued foreclosure and repeatedly mislead and abused Mr. Hawthorne in an effort to collect on the mortgage loan. Mr. Hawthorne brings this action

to save the home in which he resides.

## PARTIES

2.  Plaintiff Miles Hawthorne is a West Virginia resident and a disabled veteran of the United States Coast Guard who served from 1998 to 2002.

3.  Defendant Bank of America, N.A. ("BANA") is the servicer of the subject loan and does business in Harrison County, West Virginia, and has a principal place of business at 100 North Tryon Street, Charlotte, North Carolina, 28202.

## STATEMENT OF FACTS

4.  (a) On or about February 15, 2011, Plaintiff purchased his home from the Secretary of Housing & Urban Development (HUD) for $95,000

    (b) Plaintiff financed the home purchase with a VA guaranteed mortgage loan from lender, Bank of America, N.A.

5.  (a) The loan was for a principal balance of $95,000.00 and contained a contractual guarantee by the United States Department of Veterans Affairs ("VA"), which requires—as incorporated into the contract—that Defendant comply with regulations and laws governing VA-guaranteed loans, including those regulations governing Defendant's actions in the event of the borrower's default.

    (b) The VA guaranteed mortgage loan further provided for an interest rate of 4.5% and monthly payments, including amounts for taxes and insurance, of approximately $619.87.

First Request for Assistance

6.  (a) In or around 2012, Plaintiff anticipated struggle maintaining regular payments after a vehicle accident and work-related obstacles.

    (b) As a result, Plaintiff, at the suggestion of the Department of Veteran's

Affairs, reached out to Defendant to inquire about programs that would help Plaintiff retain his home and make affordable payments.

7.      Defendant sent Plaintiff a Request for Mortgage Assistance (RMA) to fill out and return with relevant financial documents and instructed Plaintiff to contact Titanium Mortgage Solutions, a housing counseling firm with which Defendant contracts some loss mitigation processing.

8.      (a)     In or around spring 2012, Plaintiff submitted a completed RMA and documentation relative to his hardship.

9.      (a)     However, some time in or around April 2012, Defendant declined to offer any assistance for the stated reason that Plaintiff's information regarding his home owner association dues was insufficient.

        (b)     Plaintiff requested further explanation from Defendant regarding its stated reason for denial but was denied any further explanation.

Second Request for Assistance

10.     (a)     Instead, in or around May 2012, Defendant sent Plaintiff a new RMA to complete and return and provided Plaintiff with a new point of contact, Mr. Smith, and his contact information.

        (b)     However, this new RMA sent by Defendant to Plaintiff was pre-filled out in places and contained incorrect information.

        (c)     Plaintiff attempted to either correct Defendant's pre-filled out information or obtain a new blank RMA to complete and return, but was not able to make contact with his assigned point of contact with Defendant.

        (d)     Plaintiff attempted on multiple occasions to make contact with Defendant's

employee, Mr. Smith, via electronic mail and telephone, but was ultimately not successful.

11. Nevertheless, Plaintiff submitted yet another completed RMA and attached documentation relative to his hardship in or around September 2012.

12. By November 2012, Plaintiff had not received any communications from Defendant; no status updates, no request for additional information, and no denial or approval.

13. Plaintiff attempted, via written correspondence dated November 16, 2012, to contact his point of contact with Defendant, Mr. Robert Smith, and request information regarding his latest request for assistance, but was ultimately unsuccessful as Mr. Smith failed to ever respond.

14. Plaintiff also contacted two additional of Defendant's employees via electronic mail dated December 10, 2012, inquiring about the status of his most recent request.

15. Without ever providing Plaintiff with any updates or requests for additional documentation, Defendant declined to offer Plaintiff any assistance in or around January 2013 for the state reason that Plaintiff failed to submit a complete RMA.

Third Request for Assistance

16. Plaintiff was able to make his mortgage payments through May 2013, but due to being forced out of work, he was unable to continue.

17. In or around October 2013, after raising disputes with Defendant regarding the application of payments Plaintiff made in March and April of 2012, Plaintiff submitted his third request for assistance.

18. Seemingly without reviewing Plaintiff's third submission and without providing Plaintiff with any information, requests for additional documentation, or a denial of assistance, Defendant set a foreclosure sale date for February 4, 2014.

Fourth Request for Assistance

19. Frustrated with Defendant's lack of effort and failure to properly service his loan, Plaintiff contacted the Department of Veteran's Affairs directly for some guidance on obtaining assistance from Defendant, his mortgage loan servicer.

20. Plaintiff was advised to submit another complete RMA, which was filled out with the assistance of a counselor with the Department of Veteran's Affairs working with Plaintiff.

21. (a) On or about January 24, 2014, Plaintiff submitted his fourth RMA to be considered for payment alternatives to foreclosure as a way to help Plaintiff retain his home.

(b) When this submission was sent, Defendant agreed to postpone the foreclosure sale set for February 4, 2014.

22. By letter dated February 5, 2014, Defendant sent Plaintiff a letter representing that he still needed to submit bank statements, a completed RMA, and proof of his VA and unemployment benefits, all of which were submitted on January 24, 2014.

23. Plaintiff attempted to contact his point of contact with Defendant to inform him that all of these documents were included with his submission of January 24, 2014, but was unsuccessful in reaching anyone with Defendant who was aware of the most recent submission.

24. Finally, without providing any explanation, denial, status updates, or responding to Plaintiff's attempts to obtain information, Defendant set a foreclosure sale date for May 13, 2014, at 11:00am.

25. Defendant allowed Plaintiff's indebtedness to accrue unnecessarily by failing to take timely and required action to ensure home retention.

26. After dragging out a purported review for alternatives to foreclosure for nearly one year, and without providing Plaintiff any response whatsoever to his most recent request for a workout alternative to foreclosure, Defendant set the foreclosure sale date for May 13, 2014.

27. Defendant has given no indication that it will attempt to consider Plaintiff for any alternative to foreclosure despite its promise to work with veterans to make home retention a priority.

28. Prior to setting the foreclosure sale for May 13, 2014, Defendant did not provide Plaintiff with a written decision on his request for a workout alternative to foreclosure or any explanation for why it opted to pursue foreclosure rather than to help this veteran save his home.

29. Plaintiff brings this action to save his home and seek an alternative to foreclosure as he expected to receive from Defendant by virtue of Defendant's agreement to treat veterans with special care and prevent the homelessness of our nation's heroes.

## COUNT I - BREACH OF CONTRACT

30. Plaintiff incorporates all of the preceding paragraphs by reference.

31. There exists a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

32. In 2011, Plaintiff and Defendant entered contracts (the Note and Deed of Trust) that limit each party's rights and responsibilities.

33. The Deed of Trust contract provides that Defendant's rights upon the borrower's default are limited by Title 38 of the United States Code and any regulations issued thereunder. (See Deed of Trust and VA Guaranteed Loan and Assumption Policy Rider.)

34. The contract further provides Plaintiff a right to reinstate his loan. (See Deed of Trust ¶ 18.)

35. Defendant breached the contract by:

    (a) failing to timely and accurately respond to Plaintiff's requests for assistance;

    (b) discouraging Plaintiff from providing payments for his account;

(c) as a result, allowing arrears to accumulate on the loan until Plaintiff had no ability to reinstate;

(d) failing to consider Plaintiff for all possible alternatives to foreclosure before setting foreclosure dates; and

(e) notwithstanding contractual language requiring compliance with VA regulations, failing to comply with VA regulations and guidance requiring, *inter alia*, that the Defendant consider Plaintiff for a variety of loss mitigation options, and provide notice of such rejection(s), if that is the case, in writing, prior to foreclosure.

36. Plaintiff was damaged as a proximate result of Defendant's breach of express contract provisions and its contractual duties.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate actual damages and equitable relief, including but not limited to, directing Defendant to appropriately service and conduct loss mitigation procedures regarding Plaintiff's mortgage loan; and

(b) Such other relief as the Court deems equitable and just.

### COUNT II - ILLEGAL DEBT COLLECTION

37. Plaintiff incorporates all of the preceding paragraphs by reference.

38. Defendant made multiple misrepresentations to Plaintiff, including but necessarily limited to the misrepresentations that (1) no other alternatives to foreclosure were available as a means of beginning the process of recovering the collateral through foreclosure, (2) there were points of contact with whom Plaintiff could communication regarding his mortgage loan, and (3) Plaintiff had failed to provide certain information; Defendant used fraudulent, deceptive, or misleading representations or means in an effort to collect or to obtain information about Plaintiff, in violation

of section 46A-2-127 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages and appropriate civil penalties for each violation pursuant to the sections 46A-5-101(1) and -106 of the West Virginia Code;

(b) Reasonable attorney's fees and costs of this litigation; and

(c) Such other relief as the Court deems equitable and just.

## COUNT III - ILLEGAL DEBT COLLECTION

39. Plaintiff incorporates all of the preceding paragraphs by reference.

40. By failing to consider Plaintiff for all possible options provided by the VA as alternatives to foreclosure and thereby prematurely and unjustifiably resorting to forfeiture of Plaintiff's home, Defendant used an unconscionable and/or unfair means to collect in violation of section 46A-2-128 of the West Virginia Code.

41. By failing to take any action with respect to Plaintiff's reasonable request for a workout alternative to foreclosure for eighteen months; discouraging Plaintiff from making payments and instructing Plaintiff to ignore attempts to collect, thereby paving the way to easy forfeiture, Defendant used an unconscionable and/or unfair means to collect in violation of section 46A-2-128 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages and appropriate civil penalties for each violation pursuant to the sections 46A-5-101(1) and -106 of the West Virginia Code;

(b) Reasonable attorney's fees and costs of this litigation; and

(c) Such other relief as the Court deems equitable and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

|  |  |
|---|---|
| /s/ Sara Bird | **Plaintiff,**<br>**MILES K. HAWTHORNE**<br>**By Counsel.** |

Sara Bird (WV Bar No. 10269)
Mountain State Justice, Inc.
321 W. Main St., Ste. 401
Clarksburg, WV 26301
(304) 326-0188
(304) 326-0189 (fax)
sara@msjlaw.org